A.T. v S.T. (2025 NY Slip Op 51761(U))

[*1]

A.T. v S.T.

2025 NY Slip Op 51761(U)

Decided on November 3, 2025

Supreme Court, Westchester County

Hyer, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 3, 2025
Supreme Court, Westchester County

A.T., Plaintiff,

against
S.T., Defendant.

Index No. XXXXX

Plaintiff: Christopher W. McClure, Esq., The Law Firm of William G. Sayegh, P.C., 65 Gleneida Avenue, Carmel, NY 10512
Defendant: Self-Represented Litigant

James L. Hyer, J.

This Decision and Order is being entered following an oral application made by Plaintiff's counsel during a conference held before the undersigned on October 31, 2025, requesting that this Court determine a purported settlement agreement between the parties set forth on a deposition transcript to be enforceable and to incorporate the terms of same into a judgment of divorce to be entered by this Court.
Relevant Factual and Procedural History
On April 3, 2025, this matrimonial action was commenced with the filing of a summons and complaint,[FN1]
which asserted that the parties were married in 1988 and have no unemancipated children, seeking a dissolution of the parties' marriage pursuant to the alleged irretrievable breakdown of the parties' relationship pursuant to New York State Domestic Relations Law (hereinafter "DRL") § 170(7), along with other ancillary relief.
On April 16, 2025, a request for judicial intervention was filed.[FN2]

On April 25, 2025, a preliminary conference order was entered,[FN3]
which set forth a discovery schedule including the completion of depositions by July 16, 2025.
On October 14, 2025, following motion practice and a number of Court conferences, an Order was entered,[FN4]
which required that all depositions be completed by October 29, 2025, with party depositions being held on October 29, 2025, for Plaintiff, and October 28, 2025, for Defendant.
On October 28, 2025, Plaintiff's counsel filed a letter with the Court wherein he asserted that this action had been resolved pursuant to the terms of a settlement set forth within a deposition transcript:
"This office represents the plaintiff, A.T., on the above-referenced matrimonial matter pending before the Court. I am pleased to report that the parties have reached a settlement in this matter and that the settlement was spread upon the record under oath during the deposition of the Defendant this afternoon. As such, we have cancelled Plaintiff's deposition which was court ordered for tomorrow. I will prepare the divorce documents and shall submit them promptly upon my receipt of the settlement transcript."[FN5]
On October 28, 2025, an Order was entered providing the following directives:
"1. On 10/31/2025 at 9:00 a.m., all parties and counsel shall appear prepared to place the settlement terms on the record, followed by an allocution of the parties, followed by an inquest wherein Plaintiff and Defendant's affidavit questions shall be addressed and Plaintiff's counsel shall submit proposed divorce documents needed for this Court to enter a judgment of divorce which will be entered on the record.
2. Unless modified herein, all prior Court decisions and orders remain in effect, including, but not limited to, any discovery deadlines."[FN6]
On October 29, 2025, the self-represented Defendant responded, providing his position that no settlement had been reached (hereinafter "Notice of Rejection of Settlement"), asserting:
"Your Honor: I write to correct Plaintiff's counsel's representation that 'the parties have reached a settlement'. No final settlement has been reached. What actually occurred on October 28, 2025: The discussion was explicitly non-binding. I participated in good faith but understood nothing was final until I received complete financial disclosure and reviewed written terms. The court ordered Plaintiff's deposition scheduled for Wednesday was cancelled without my consent. My Immediate Response: The same day (October 28), I emailed counsel (attached as Exhibit B) stating I am 'not prepared to present any purported settlement to the Court' and requesting required documentation..."[FN7]
The e-mail annexed to Defendant's correspondence noted above was sent from Defendant's e-mail as referenced on his NYSCEF consent to the e-mail of Plaintiff's counsel as referenced on his NYSCEF consent, dated October 28, 2025, at 10:24 p.m., which includes the following:
"Dear Mr. McClure,
I am writing regarding the settlement discussion that occurred on October 28, 2025, during what was scheduled as a deposition. I have serious concerns about the process and the adequacy of financial disclosure.
CONCERNS ABOUT THE PROCESS:
1. Non-Binding Nature of Discussion:
It was clearly established at the outset that this would be a non-binding settlement discussion. I participated in good faith based on that understanding. A non-binding discussion means that nothing is final or enforceable until complete financial disclosure is provided, written terms are presented, and I have adequate time to review and formally agree to all provisions.
2. Limited Time to Consider:
The settlement discussion arose during a deposition setting. I was not adequately prepared to negotiate and finalize settlement terms on the spot, nor did I understand that finalizing terms was the purpose. I understood we were having preliminary, non-binding discussions to explore possible resolution.
3. Incomplete Financial Disclosure:
I specifically requested information about material financial matters that remain inadequately explained or undisclosed: a) Wells Fargo Account: Complete account documentation, including all checks and transaction history b) Gift to Daughter: Documentation regarding what your client characterized as a 'gift' to our daughter, with conflicting amounts stated: - Net Worth Statement indicates $250,000 - Verbal disclosure during discussion indicated $330,000 I require complete documentation Bank records showing the transaction - How this is 'accounted for in calculations' as stated. c) Complete Net Worth Statement: Accurate and complete statement of all assets and liabilities with supporting documentation for all claimed values Your response that certain items are 'gifts' and 'accounted for in calculations' does not constitute adequate financial disclosure as required by New York law. The discrepancy between $250,000 and $330,000 alone requires clarification and documentation.
4. Lack of Written Terms:
No written settlement agreement has been provided. I cannot agree to final terms that have not been reduced to clear, written language that I can review carefully.
5. Material Issues Unresolved:
Critical provisions remain unclear or unaddressed: * Tax liability allocation for potential foreign income adjustments to joint returns * Contractor access terms and compensation for extended occupancy beyond February 2026 * Precise terms of property division * Treatment of separate, pre-marital property * Sale of [REDACTED] as joint asset for full $500K capital gains exclusion * Specific division of all assets and liabilities
REQUIRED BEFORE ANY AGREEMENT CAN BE FINALIZED:
1. Complete Financial Disclosure: *All documentation related to Wells Fargo account(s) *Complete documentation of the $250,000/$330,000 "gift" (clarify amount and provide proof) *Accurate and complete net worth statement * Documentation supporting all claimed values
2. Written Settlement Agreement: *All terms in writing with specific language *Clear allocation of rights and responsibilities *All provisions from verbal discussion reduced to written form *No ambiguities or undefined terms
3. Transcript: *Copy of court reporter transcript from October 28, 2025 *I need to review exactly what was stated on the record
4. Adequate Time to Review: *Reasonable time to review all documents after receiving them *Opportunity to understand all implications *No pressure to agree without full understanding
POSITION REGARDING COURT APPROVAL:
Given the incomplete disclosure, lack of written agreement, and the non-binding nature of our discussion, I am not prepared to present any purported settlement to the Court for approval. If a court appearance is scheduled before these issues are resolved, I will respectfully inform the Court that:
1. Our discussion on October 28 was explicitly non-binding
2. Full financial disclosure has not been provided despite my requests
3. Material questions remain unanswered (including the $250,000/$330,000 discrepancy)
4. No written settlement agreement has been provided for my review
5. I require additional time and information before any agreement can be finalized
PRESERVATION OF RIGHTS:
Nothing in my participation in the October 28 non-binding settlement discussion should be construed as a final, binding agreement. I was explicitly told the discussion would be non-binding, and I participated based on that understanding
As a pro se party, I require: *Complete financial disclosure as required by New York law *Adequate time to review all settlement terms in writing *Opportunity to understand all implications before finalizing any agreement I expressly reserve all rights pending receipt of the complete information requested herein.
REGARDING LITIGATION COSTS:
There were suggestions during our discussion regarding potential costs of continued litigation. However, I cannot and will not be pressured into an agreement without complete financial disclosure and adequate time to review terms. Any settlement must be entered into voluntarily with full information, not under financial pressure or threats regarding costs.
WILLINGNESS TO CONTINUE DISCUSSIONS:
I remain open to continuing settlement discussions in good faith. However, such discussions can only proceed productively after I receive: *Complete financial disclosure as detailed above *A written settlement agreement incorporating the terms discussed *Adequate time to review all materials
DEADLINE FOR RESPONSE:
Please provide all requested information and documentation by November 4, 2025 (7 calendar days). If you are unable to meet this deadline, please advise immediately so we can discuss an appropriate timeline. However, I will not agree to any court appearance to finalize a settlement before receiving this information.
CONFIRMATION REQUESTED: Please confirm receipt of this email and advise:
1. When you will provide the requested documentation
2. When a written settlement agreement will be available for my review
3. Whether you acknowledge that our October 28 discussion was non-binding
I appreciate your attention to these matters and look forward to resolving them so we can [*2]move forward appropriately."[FN8]
On October 29, 2025, Plaintiff's counsel filed a letter in response to the Rejection of Settlement, which continued to assert that a settlement had been reached and placed on the deposition transcript:
"This office represents the plaintiff, A.T., on the above-referenced matrimonial matter pending before the Court. I am writing in response to Defendant's correspondence to the Court dated today purporting to 'correct Plaintiff's counsel's representation that the 'the parties have reached a settlement'.' Mr. T's assertion that a settlement has not be reached is unequivocally false and outrageous. After approximately five (5) hours of settlement negotiations yesterday the parties reached a comprehensive settlement agreement that was transcribed by a court reporter. In fact, Defendant changed the terms of the agreement three times prior to it being placed on the record. Both parties were placed under oath and fully allocuted as to the terms of the settlement and that it was a final resolution of all the financial issues of this matter. Additionally, on the record, Defendant agreed to the granting of judgment in favor of Plaintiff on the grounds of 'irreconcilable differences'. The assertion that it was clearly established that the settlement was non-binding is outrageous. Even more outrageous is Defendant's statement that Plaintiff's deposition scheduled for today was cancelled without his consent. Both assertions are outright lies! I have ordered the settlement transcript on an expediated basis and same will unequivocally contradict all that Defendant has alleged. Plaintiff does not agree to vacate the parties extensively negotiated and legally enforceable settlement."[FN9]
On October 29, 2025, an Order was entered directing all parties and counsel to appear for a status conference on October 31, 2025, at 9:00 a.m.[FN10]

On October 30, 2025, Plaintiff's counsel filed a transcript entitled "Settlement Statement," dated October 28, 2025, prepared by Laura Evans, Reporter (hereinafter "Purported Settlement"), which includes a discussion of Plaintiff, Plaintiff's counsel and Defendant pertaining to issues involved in this action followed by an "allocution" by the Plaintiff's counsel:
"MR. McCLURE: I would ask you, can you swear the parties in?
(WHEREUPON, S.T. AND A.T. WERE THEN SWORN IN BY THE COURT REPORTER)
MR. McCLURE: Mr. T, you're here representing yourself today?
MR. T: Yes.
MR. McCLURE: And you've had the opportunity in the past, if you wanted, to consult with a private counsel, but you chose to represent yourself today. Right?
MR. T: Yes.
MR. McCLURE: And you understand everything that happened today that we put on the record?
MR. T: Yes.
MR. McCLURE: And you heard the settlement that was put on the record today, and that's part of the settlement that we've been negotiating for the last three hours or so?

 MR. T: Yes.

MR. McCLURE: And you agree to the terms of that settlement?
MR. T: Yes.
MR. McCLURE: Has anyone forced, coerced, or threatened you to agree to the terms of the settlement?
MR. T: No.
MR. McCLURE: Are you entering into the settlement of your own free will?
MR. T: Yes.
MR. McCLURE: Don't take offense to this question. It's a standard question. Have you taken any medicine or any other substance or alcohol or anything that would impair your ability to understand what happened here today?
MR. T: No.
MR. McCLURE: And you agreed to the settlement?
MR. T: Yes.
MR. McCLURE: Thank you. Dr. T, you heard the settlement put on the record today?
DR. T: Yes.
MR. McCLURE: And you're represented by myself and Mr. Sayegh?
DR. T: Yes.
MR. McCLURE: And this is a negotiated settlement we've been negotiating for the last few hours?
DR. T: Yes.
MR. McCLURE: So you heard and understand the settlement and you agree to the settlement?
DR. T: Yes.
MR. McCLURE: And you understand that this settlement is in full satisfaction of everybody's claims regarding your marital and separate property assets?
DR. T: Yes.
MR. McCLURE: Has anyone forced or coerced you or threatened you into entering into this settlement?
DR. T: No.
MR. McCLURE: Are you entering into this settlement of your own free will?
DR. T: Yes.
MR. McCLURE: And you agree to the settlement?
DR. T: Yes.
MR. McCLURE: Just like I asked Mr. T, have you taken any medication or any substance or alcohol that would impair your ability to understand what happened today?
DR. T: No.
MR. McCLURE: And again, you agree to the settlement of your own free will?
DR. T: Yes.
MR. McCLURE: Both parties understand that this settlement resolves all the equitable distribution issues in this case?
MR. T: Yes.
DR. T: Yes.
MR. McCLURE: Mr. T, as far as the grounds for divorce, you agree that the plaintiff, A, [*3]will be granted a judgment of divorce on the grounds of irreconcilable differences?
MR. T: Yes.
MR. McCLURE: And that I will prepare the judgment of divorce and all the findings of fact and all those ancillary documents on notice to you, and will submit them to the court as well as the settlement?
MR. T: Yes. One more thing I just realized. So the divorce in India has to be done separately. I will get the papers prepared. Whenever she's there in the next year, as we planned before, she should sign the document.
DR. T: I'm not a citizen so I don't care.
MR. T: No, no, you don't care, but a legal document is a legal document. We were married in India so it has to be dissolved in India also.
MR. McCLURE: To the extent reasonably necessary, they'll be completed by Dr. T within one year from today.
DR. T: No. I'm not going to India. If he can send them to me, I'll sign them.
MR. McCLURE: Understood. Mr. T, do you have any questions about what happened today?
MR. T: No.
MR. McCLURE: I thank everybody for being here, getting the hard workdone. We'll order a copy of the transcript and split the costs for today. I will begin preparing the divorce documents, and I'll write a letter to the court and I'll advise the court that we have settled the case and that we'll submit the documents."
On October 31, 2025, a conference was held before the undersigned wherein appearances were made by Plaintiff, Plaintiff's counsel and Defendant as a self-represented litigant, a transcript for which was filed (hereinafter "Conference Transcript").[FN11]
During the conference Plaintiff's counsel asserted his position that the Purported Settlement set forth in the constituted a binding settlement:
"MR. MCLURE: Yes, your Honor. So on Tuesday, October 28th, we had a Court ordered deposition scheduled of Mr. T, scheduled at ten o'clock and we ended up moving it on agreement to my office in Carmel. When we arrived, I started to discuss with Mr. T a little bit about whether he wanted to have a conversation.
* * *
Ultimately, after about four hours, we reached an agreement.
* * *
I did the voir dire, I did everything, a very comprehensive settlement agreement and we settled the case. The court reporter is leaving, I said, okay, I'm going to call Veritex, I'll cancel for tomorrow, no problem, everything was fine. We shook hands. He left. Everything was good. I called—I wrote the letter to the Court to advise the court of what occurred. I cancelled the deposition and then 10:30 that night, I didn't see it until the next morning, because I went to bed early, then all of a sudden I get this e-mail that it wasn't a binding agreement, he's not agreeing to anything and he never agreed—he never consented to cancelling Plaintiff's deposition which is nonsensical because he didn't get deposed because we settled the case. Why would we do a deposition the next day when we have a full comprehensive settlement, full voir dire that I actually ordered expedited and they gave it to me yesterday to upload to the Court. So the case is settled and it's very clear, I have said it multiple times that this settlement was in full satisfaction of all the parties' financial interests in this case, whether it was the India money that—we worked it all out. We spent a lot of time going through each and every number and everything and ended up working out a comprehensive settlement. As far as my client and I are concerned, we have a valid binding settlement and we put it on the record and I put it on the record on purpose, so we couldn't have—there wouldn't be any questions about whether it needed to—anything needed to change. He even agreed in here, and I asked him, you're going to agree that you'll grant Plaintiff a Judgment of Divorce based on irreconcilable differences, okay, yes, I'll do the divorce documents, I'll prepare them, I'll give them to you, I'll send them to you on notice, okay, we parted ways. I mean, that's in essence exactly what happened, so anything otherwise saying that there was always an agreement that was nonbinding, it's absurd. Why would we negotiate four hours, put a full settlement on the record and then not do Defendant's deposition if it was even remotely close to being a nonbinding agreement, so I'll rest on the record itself. Then I sent a letter, I said, you'll see it in the transcript that it's an absolute lie that it was nonbinding and he didn't consent to cancel the deposition and then he sends a letter saying that I'm lying because it's not on the record, well, yes, it's not in the transcript that he consented to cancel the deposition. My point being was, the fact that we settled the case and of itself is evidence that we didn't need to do the deposition the next day."[FN12]
Plaintiff's counsel then made an application for this Court to declare the agreement enforceable incorporating same into a judgment of divorce to be entered by this Court:
"MR. MCLURE: I'm making an application to the Court that this case is settled and that the Court should accept the fully sworn to allocuted settlement in this case. As your Honor indicated in your so-ordered letter to me, I already drafted all of the settlement documents, Judgment of Divorce, proposed findings, I did everything already. We're prepared and we're asking your Honor, that this case be settled and that I'll submit the judgment on notice and whatever allocution needs to be done and that your Honor sign [*4]the Judgment of Divorce.
THE COURT: Just so I understand, you're asking that the Court accept the settlement agreement that you believe was reached between your client and the Defendant and that the Court incorporate by reference but not merge those terms into a Judgment of Divorce to be entered?
MR. MCLURE: That's exactly what I'm asking for, yes, your Honor."[FN13]
The Defendant then responded by asserting that the statements placed on the Deposition Transcript did not constitute a binding settlement:
"MR. T: I arrived at 9:55 for a 10:00 appointment. I was led into the conference room. 10:20, Mr. McClure showed up and he had some documents in his hand which basically to me sounded like deposition because he was basically asking me, okay, this statement, what is this, what is that, so we spent about half an hour, 25 minutes on that. And after that, they suggested, oh, that's all we need to really do, can we talk about settlement. I said okay, in good faith, we can talk about it and it was very clearly said at the outset, it's a nonbinding discussion, so I was very careful throughout that day until a little after three when I left that it was never, ever changed from a nonbinding to a binding. That word never came up. The word saying it's a final agreement never was mentioned or discussed, so all along, what I was doing was really discussing the terms of the agreement in good faith to move the case forward, but the bottom line remains and I mentioned it to him right at the outset, that the Net Worth Statement of Plaintiff is still incomplete.
* * *
It was never mentioned in those—in the discussions for about a few hours where we said that this is this and that is that and that we—that this is going to be a final, oral binding agreement. It was never mentioned. After that, the reporter was—court reporter was called back in and he started dictating terms, so I said okay, he's dictating terms, I have a chance to look at them and he was—he was in full lawyer speed of talking and, of course, court reporter being equally experienced, writing down everything, so my only choice was to wait until the transcript is available to see what actually went through and that is what I was hoping to see. However, at about a little after 5:00, I saw this update, I left about 3:15 or something like that. I went to get my lunch, I had not eaten anything during the day. I went to the mall nearby, had a lunch and when I went back to the hotel, I saw this e-mail saying oh, we're all done and I said no, that's not really entirely true, that was not my understanding and that was never, ever, ever indicated that this is going to be a final binding agreement.
* * *
THE COURT: Sir, Mr. T, I'm just simply asking you what your position is. I have an [*5]application for the Court to acknowledge a purported marital agreement between you and your wife arising out of terms that were placed upon the record during a deposition. It's your position that the Court should accept that agreement but not merge them into a Judgment of Divorce or is it your position that this is not a binding agreement?
MR. T: This is not a binding agreement.
THE COURT: Thank you.
MR. T: I would like the discovery to continue."[FN14]

Legal Analysis

Generally, marital agreements may be entered into in writing or verbally, but in either instance, must be made in compliance with the formalities set forth by the applicable statutes. Turning first to those marital agreements made in writing, the parties must comply with the directives set forth in DRL § 236(B)(3) which provides:
"Agreement of the parties. An agreement by the parties, made before or during the marriage, shall be valid and enforceable in a matrimonial action if such agreement is in writing, subscribed by the parties, and acknowledged or proven in the manner required to entitle a deed to be recorded. Notwithstanding any other provision of law, an acknowledgment of an agreement made before marriage may be executed before any person authorized to solemnize a marriage pursuant to subdivisions one, two and three of section eleven of this chapter. Such an agreement may include (1) a contract to make a testamentary provision of any kind, or a waiver of any right to elect against the provisions of a will; (2) provision for the ownership, division or distribution of separate and marital property; (3) provision for the amount and duration of maintenance or other terms and conditions of the marriage relationship, subject to the provisions of section 5-311 of the general obligations law, and provided that such terms were fair and reasonable at the time of the making of the agreement and are not unconscionable at the time of entry of final judgment; and (4) provision for the custody, care, education and maintenance of any child of the parties, subject to the provisions of section two hundred forty of this article. Nothing in this subdivision shall be deemed to affect the validity of any agreement made prior to the effective date of this subdivision."
New York State General Obligations Law § 5-311, referenced in the above provision of the DRL, directs:
"Except as provided in section two hundred thirty-six of the domestic relations law, a husband and wife cannot contract to alter or dissolve the marriage or to relieve either of his or her liability to support the other in such a manner that he or she will become incapable of self-support and therefore is likely to become a public charge. An agreement, heretofore or hereafter made between a husband and wife, shall not be considered a contract to alter or dissolve the marriage unless it contains an express [*6]provision requiring the dissolution of the marriage or provides for the procurement of grounds of divorce."
The Court of Appeals in addressing the importance of the formalities imposed upon parties entering into written marital agreements by the above statutes, noted that they serve to impress upon the parties the significance of the understandings being formed within such documents, further holding:
"'Generally, acknowledgment serves to prove the identity of the person whose name appears on an instrument and to authenticate the signature of such person' (Matisoff, 90 NY2d at 133, 659 N.Y.S.2d 209, 681 N.E.2d 376). The acknowledgment also 'necessarily imposes on the signer a measure of deliberation in the act of executing the document' (Galetta, 21 NY3d at 192, 969 N.Y.S.2d 826, 991 N.E.2d 684). And because '[m]arital agreements within [DRL] section 236 (B) (3) encompass important personal rights and family interests[,] ... the formality of acknowledgment underscores the weighty personal choices to relinquish significant property or inheritance rights, or to resolve **1046 ***746 important issues concerning child custody, education and care' (Matisoff, 90 NY2d at 136, 659 N.Y.S.2d 209, 681 N.E.2d 376). Put another way, a couple's decision to be bound by the terms of a nuptial agreement is necessarily based on their understanding of each other's respective economic status and their future as a couple at the time they sign the agreement, and the formalities *450 are intended to impress upon the signatories the consequences at the moment of affirmation." (Anderson v. Anderson, 37 NY3d 444 [2021]).
Turning next to oral marital agreements, pursuant to New York State Civil Practice Law and Rules (hereinafter "CPLR") § 2104:
"An agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in a writing subscribed by him or his attorney or reduced to the form of an order and entered. With respect to stipulations of settlement and notwithstanding the form of the stipulation of settlement, the terms of such stipulation shall be filed by the defendant with the county clerk."
Compliance with the statutory requirements of CPLR § 2104 is mandatory as the Court of Appeals, in a decision wherein it found an agreement unenforceable due to failure to adhere to the statutory directives, noted that the statute "on its face admits no exceptions" (Bonnette v. Long Island College Hosp., 3 NY3d 281 [2004]).
In the context of matrimonial actions, stipulations of settlement placed upon the record in open Court will be enforceable and will not be set aside due to one party's refusal to execute a written agreement with the same terms wherein the parties knowingly, voluntarily and intelligently agreed to be bound (McKelvey v. McKelvey, 127 AD3d 1308 [2d Dept 2015]; Tavolacci v. Tavolacci, 114 AD3d 759 [2d Dept 2014]; Ebel v. Ebel, 121 AD3d 934 [2d Dept 2014]; Pellino v. Pellino, 308 AD2d 522 [2d Dept 2003]; Luisi v. Luisi, 244 AD2d 464 [2d Dept 1997]; Carroll v. Carroll, 236 AD2d 353 [2d Dept 1997]; Blake v. Blake, 229 AD2d 509 [2d Dept 1996]).
However, oral stipulations must be made in "open Court" and in a decision involving [*7]similar facts as in this matter, a determination was made that settlement terms placed on a deposition transcript did not constitute an enforceable marital agreement pursuant to DRL § 236(B)(3) or CPLR § 2104:
"In this application defendant-husband seeks to have this court deem an out of court transcript taken during a deposition to be a stipulation of settlement of a matrimonial action. The parties met for a deposition in the fall of 1989. During the course of that deposition settlement talks were undertaken. These talks resulted in a proposed stipulation of settlement being laid out before the stenographic reporter who converted it to a transcript. Letters were subsequently sent between counsel for the parties which imply that a settlement of the case was close at hand. Defendant now proposes that the court *448 enforce the alleged stipulation of settlement as laid out in the deposition transcript as if it were a valid stipulation of settlement. Defendant offers no authority which would permit this court to accept a deposition transcript as a stipulation of settlement. Domestic Relations Law § 236 B, subd. 3, requires that a valid separation agreement be signed and subscribed by the parties.
* * *
Clearly the transcript offered by defendant does not meet the statutory requirements. The analysis cannot end at this point however. Pursuant to CPLR 2104 an agreement between the parties or their attorneys relating to an action, while usually requiring a subscribed writing, will be enforceable if made between counsel in open court or if reduced to the form of an order and entered (Cf., Deal v. Meenan Oil Company, 153 AD2d 665, 544 N.Y.S.2d 672). The Second Department has upheld the validity of open court stipulations of settlements in matrimonial actions in Harrington v. Harrington, 103 AD2d 356, 103 AD2d 356. However, while at first review the statute appears to be expansive in its scope, CPLR 2104 actually limits informal or oral stipulations of settlements.
* * *
Defendant wants this court to expand the dictates of CPLR 2104 to include out of court stipulations of settlement held before a stenographic reporter. The court will not undertake such a blatant rewriting of the statute. The statute is clear. Oral stipulations of settlement are enforceable only if they are made in open court before a judge. A stenographic reporter is not sufficient. Defendant has failed to provide a basis for this motion. Accordingly, it is ordered that defendant's application be denied in its entirety" (Trapani v. Trapani, 147 Misc 2d 447 [Sup. Ct. Kings Cnty. 1990]).
Here, similar to Trapani, it is clear that the Purported Settlement does not comply with the terms of a written marital agreement pursuant to DRL § 236(B)(3) or the statutory directives of CPLR § 2104 which the Court of Appeals correctly asserted on its face admits no exceptions, and expanding the clear meaning of "in open court" to include agreements made in the course of depositions would be an improper exception of the statute. Moreover, the wisdom applied by the Court of Appeals in Anderson, regarding the need for parties to comply with statutory formalities when entering into written marital agreements, is equally necessary when parties are entering into oral marital agreements. Specifically, that oral marital agreements made in open court should bear the burden of the same statutory formality and compliance as their written alternatives. Similar to the acknowledgement provision of DRL § 236(B)(3), the "open Court" requirement of CPLR § 2104 is a formality that cannot be discarded and in the view of this [*8]Court, would not be achieved in a venue other than the Court, before the presiding justice, in the presence of a court reporter (see Accarino v. Hirsch, 6 AD2d 795, [2nd Dept 1958] [A settlement agreement made by counsel in chambers with the assigned justice without the presence of a court reporter would not having the binding effect of one made in open Court with a reporter present]).
The value of the "open Court" requirement is clear as the justice presiding over the subject action would preside over the terms being placed upon the record, observing the entire process carefully to ensure that the rights of the litigants are protected and the terms are clear, and likely engaging in an allocution to not only ensure that the necessary questions are presented to the parties, but to gauge the affect of the parties to confirm the lack of duress, impairment or other issue of concern that may present an impediment for the settlement proceeding.[FN15]
It is without question that the same safeguards to litigants could not occur with settlements placed upon a deposition transcript before reporter in an office of an attorney for an adversary who conducted an allocution of a self-represented party.
Notably, in the context of matrimonial actions, as in this instance, the Court is customarily requested to so-order the stipulation reached (by signing the last page of the written agreement or last page of the Court transcript wherein the verbal terms were made in open Court) after which the terms of such agreement are incorporated by reference, but not merged, into a judgment of divorce to be entered. Therefore, it is imperative that when faced with such a request, a Court tread carefully as the resulting agreement will be binding upon the parties and the Court:
"A stipulation made in open court is the equivalent of a contract whose provisions are binding and enforceable and the rights created thereunder may be enforced by a plenary action. Unlike most contracts, however, the court is a party thereto and the court is bound to enforce it. Similarly, in certain instances where the parties to such a contract desire to relieve themselves of the terms of the contract, the court can approve such a vacatur. The court's power to set aside a stipulation where all parties do not agree thereto, however, is limited to those cases where the stipulation was induced by fraud, or achieved by overreaching conduct, or based on mutual misunderstanding or brought about by some other means contrary to public policy. (Stein v. Severino, 41 Misc 2d 209 [Sup. Ct. Nassau Cnty. 1963] [internal citations omitted]; see also, Tepper v. Tannenbaum, 83 AD2d 541 [1st Dept 1981]).
The need for Court oversight of the process by which stipulations are made in open Court are heightened when one party to a stipulation is not represented by counsel. This has resulted in the adoption of legislation requiring the Court to engage in an allocution of the parties prior to approving any stipulations pertaining to landlord-tenant proceedings (see RPAPL § 746),[FN16]
the [*9]public policy of which is set forth in the bill jacket, noting the following as the justification for the adoption of the statute:
"Agreements in landlord-tenant cases brought to Civil Court are frequently set forth in stipulations, the terms of which may be oral or written. Violation of these terms by one or more of the parties can result in the entry of a judgment or in the execution of a judgment that has already been entered. Due to the volume of cases handled by the Court, stipulations are often issued quickly and with little explanation. This procedure can leave an unrepresented party without a clear understanding of his or her rights and responsibilities as described in the stipulation. In order to insure that these parties understand the agreements that have been reached, it is necessary that Civil Court judges clearly and fully describe the terms of stipulation." (New York Bill Jacket, 2009 S.B. 3847, Ch. 281)
When presented with stipulations pertaining to matrimonial actions, this Court is not bound to the requirements set forth in RPAPL § 746, and no such equivalent requirements exists in the DRL. However, this Court takes into consideration the strong public policy expressed by our Legislature intended to protect self-represented litigants entering into a stipulation of great import to their lives. Similar to self-represented litigants in landlord-tenant proceedings, those involved in matrimonial actions require the same protections afforded by RPAPL § 746, as matrimonial agreements may go well beyond impacting a parties' housing but may also address such important issues as the grounds for the dissolution of their marriage, requests for orders of protection, their finances, and custody of their children.[FN17]
 Therefore, the statutorily mandated [*10]safeguards afforded self-represented litigants in landlord-tenant proceedings entering into a stipulation are also warranted in matrimonial litigation to ensure that the lack of representation of that party is not damaging to the interests of the self-represented litigant who may face challenges including lack of understanding of the legal process and domestic violence.[FN18]

Such a review also permits the presiding justice to assess if approval by the Court of the requested settlement terms is appropriate or if rejection is warranted (Ruppert House Co. Inc. v. Altmann, 127 Misc 2d 115 [Civ. Ct. New York Cty, 1985]; 254 Seaman Assocs v. Jaiman, Nov. 5, 1996 N.Y.L.J. 25, col. 2 [1st Dept App Term 1996]; Table Run Estate Inc v. Perez, Feb. 23, 1994 N.Y.L.J. 21, col. 2 [1st Dept App Term 1994]; 221 Sherman Assocs v. Fulgenico, Oct. 29, 1996 N.Y.L.J. 26, col. 1 [1st Dept App Term 1996]). This is evermore clear with respect to matrimonial actions that transcend merely financial issues, to include the custody of children, where it cannot be finally resolved by a stipulation of the parties, because the court's parens patriae responsibility transcends any such contract and such stipulations must be closely scrutinized (Matter of Caroline C., 164 Misc 2d 787 [Kings Family Court 1995]).
In this matter, it is without question that the self-represented Defendant asserts that he did not understand the process as he believed the Purported Settlement to constitute non-binding settlement discussions. Defendant further contends that he faced confusion due to Plaintiff's counsel quickly proceeding to place statements on the deposition record, that he was unfamiliar with the process and that the terms of the Purported Settlement are unfair. This Court finds that the facts presented underscore the need for the formalities required for both written and oral marital agreements noted above, in addition to Court oversight of proposed stipulations of settlement including a review of the proposed terms of the stipulation and allocution of the parties by the presiding justice. As this did not occur in this instance, proper safeguards were not afforded to the self-represented litigant and this Court was prevented from engaging in the [*11]necessary oversight that it would have had if it had engaged in an allocution of the parties.
Based upon the foregoing, Plaintiff's application is denied.
ACCORDINGLY, IT IS HEREBY:
ORDERED that Plaintiff's application is denied as this Court declines to determine the Purported Settlement to be enforceable and to incorporate it by reference, but not merge it, into a judgment of divorce to be entered by this Court; and it is hereby further
ORDERED that a status conference shall be held on November 6, 2025, at 9:00 a.m., at which time all parties and counsel shall appear, wherein a new discovery schedule shall be set for the remaining discovery to be completed in this matter; and it is further
ORDERED that by November 5, 2025, Plaintiff's counsel shall serve a copy of this Decision and Order with Notice of Entry on Defendant by e-mail and NYSCEF filing, and by that date shall file proof of service with the Court; and it is further
ORDERED that any relief requested not expressly granted herein is denied.
The foregoing constitutes the Decision and Order of the Court.
Dated: November 3, 2025
White Plains, New York
ENTER:
Hon. James L. Hyer, J.S.C.

Footnotes

Footnote 1:See, NYSCEF Doc. No. 1.

Footnote 2:See, NYSCEF Doc. No. 7.

Footnote 3:See, NYSCEF Doc. No. 24.

Footnote 4:See, NYSCEF Doc. No. 114.

Footnote 5:See, NYSCEF Doc. No. 119.

Footnote 6:See, NYSCEF Doc. No. 120.

Footnote 7:See, NYSCEF Doc. No. 121.

Footnote 8:See, NYSCEF Doc. No. 122.

Footnote 9:See, NYSCEF Doc. No. 123.

Footnote 10:See, NYSCEF Doc. No. 124.

Footnote 11:See, NYSCEF Doc. No. 125, Pg. 23:13-25-Pg. 29:1-5.

Footnote 12:See, Conference Transcript, Pg. 3:20-25-Pg. 4:1-3 & 15-16; Pg. 6:2-25-Pg. 8:1-17.

Footnote 13:See, Conference Transcript, Pg. 8:22-25-Pg. 9:1-18.

Footnote 14:See, Conference Transcript, Pg. 9:25-Pg. 10:1-24; Pg. 13:1-25-Pg. 14:1; Pg. 16:6-21.

Footnote 15:Much like the great weight afforded to a trial Court's determination of witness credibility during in Court testimony, such assessment being rarely disturbed by the appellate Courts which do not have the same insight through review of a printed transcript, an allocution conducted by an individual other than the presiding Justice, at a deposition, does not afford the presiding Justice the opportunity to observe the demeanor of the parties during the allocution, but merely permits review of a printed transcript (see, Barnet v. Cannizzaro, 3 AD2d 745 [2d Dept 1957] ["The memory, motive, mental capacity, accuracy of observation and statement, truthfulness and other tests of the reliability of witnesses can be passed upon with greater safety by a trial judge who sees and hears the witnesses than by appellate judges who simply read the printed record"]).

Footnote 16:RPAPL § 746:
1. In any proceeding under this article, if a stipulation is made, on the occasion of a court appearance in the proceeding, setting forth an agreement between the parties, other than a stipulation solely to adjourn or stay the proceeding, and either the petitioner or the respondent is not represented by counsel, the court shall fully describe the terms of the stipulation to that party on the record.

2. No stipulation required to be on the record by subdivision one of this section may be approved by the court unless the court first conducts an allocution on the record that shall, at a minimum, find the following:

(a) the identity of the parties and whether all necessary parties have been named in the proceeding;

(b) the authority of the signatory to the stipulation if the named party is not present; and

(c) shall further find:

(i) that the unrepresented party understands that he or she may try the case if he or she does not agree with the proposed stipulation or if an acceptable stipulation cannot be negotiated;

(ii) where the other party is represented, whether the party's attorney inappropriately gave legal advice to the unrepresented litigant or whether the unrepresented litigant is agreeing to the proposed stipulation as a result of undue duress;

(iii) whether the unrepresented respondent agrees with or contests any allegation in the petition and predicate notices;

(iv) that the unrepresented party is aware of and understands claims or defenses he or she may have in the proceeding and is aware of the available options in light of those claims or defenses, especially where the stipulation provides for a surrender of the dwelling unit or the conversion of a nonpayment proceeding into a holdover proceeding;

(v) that the unrepresented litigant's claims or defenses are adequately addressed in the stipulation;

(vi) that the unrepresented party understands and agrees to the terms of the stipulation;

(vii) that the unrepresented party understands the effect of non-compliance with the terms of the stipulation by either side and what the deadlines and procedures are for addressing such non-compliance, including how to restore the case to the court calendar to obtain relief under or from the stipulation;

(viii) in all non-payment cases, including where the unrepresented party indicates that he or she intends to apply for public assistance benefits or to a charity to pay rent that is sought in the proceeding and that the court has determined to be owing to the petitioner, that an appropriate rent breakdown is included in the stipulation; and

(ix) that the unrepresented party understands the implications of a judgment against him or her and the legal requirement that the petitioner provide a satisfaction of judgment upon payment.

3. The court may use a court attorney to conference a case to determine the unrepresented party's claims or defenses and his or her understanding of all available options in light of those claims or defenses, or any of the other elements of the allocution required by this section. However, such conference may not substitute for an allocution by the court and, where it is used, the results shall be reported to the court, which shall note on the record that such conference occurred.

4. Notwithstanding the foregoing, where the court, in its discretion, determines that, in the interests of justice, inclusion in the allocution required by subdivision two of this section of one or more findings described in paragraph (c) of such subdivision is or are not necessary given the history of the case, prior appearances or other factors, excluding a court attorney conference provided for in subdivision three above, such finding or findings may be omitted and the reason for such omission shall be set forth on the record.
Footnote 17:Similarly, an argument may be made that such protections for self-represented litigants is also required in proceedings within the New York State Family Court wherein parties address serious issues pertaining to children and support, despite no such statutory mandate being enshrined in the New York State Family Court Act.

Footnote 18:See, "Access to Freedom: Can Technology Improve Access to Justice For Survivors of Domestic Abuse?," 36 J. Am. Acad. Matrim. Law 187, ["Despite these barriers, studies show that there is a surge of domestic violence cases where the parties are self-represented litigants (SRLs). Studies indicate an increase of SRL cases in a variety of legal fields including family law, domestic violence, and child support.*** The U.S. National Center on State Courts indicates that 72% of family law cases have at least one self-represented litigant. SRLs tend to be negatively impacted by their lack of counsel in the legal system. Lack of representation is particularly damaging when the opposing party is represented by an attorney.*** Domestic abuse survivors face the barriers outlined above along with the stigma of self-representation."]; Christine E. Cerniglia, "The Civil Self-Representation Crisis: The Need for More Data and Less Complacency," 27 Geo J. on Poverty L. & Pol'y (2020) ["The negative impact includes problems with failure to present evidence, procedural errors, ineffective witness examination, and improper objections and arguments."]; Judge Denise S. Owens, "The Reality of Pro Se Representation," 82 Miss. L.J.: Supra 147, 159 (2013) [noting the barriers to SRLs and the lack of the "basic understanding of the court system"].